UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DALE BRYANT                                                                    PLAINTIFF

v.                                Civil No. 6:15-CV-06085-SOH-BAB

NURSE DENHAM                                                               DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Dale Bryant, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable P. K. Holmes, III, Chief, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendant's Motion for Summary Judgment.  ECF No.17. After careful consideration, the undersigned makes the following Report and Recommendation.

## 1.    BACKGROUND

Plaintiff is currently incarcerated in the Clark County Detention Center in Las Vegas, Nevada.  His Complaint alleges a denial and delay of medical care while incarcerated in the Arkansas Department of Correction ("ADC") Ouachita River Unit.  Plaintiff alleges he suffered from headaches, which caused nausea and vomiting, because Dr. Vowell discontinued his blood pressure medicine. ECF No. 31, p. 25.  Plaintiff alleges Defendant Denham, the night shift pill nurse, did not timely administer a shot of Phenergan for nausea, and did not provide a shot of toradol for his headache pain between the hours of 11:30 p.m. on October 25, 2014, and 7:00 a.m. on October 26, 2014.  ECF Nos. 6, pp. 3-5; 31, pp. 7, 14, 16.   Specifically, Plaintiff alleges he

1

asked security to be taken to the unit hospital at approximately 11:30 a.m. on October 25, 2014,

so he could receive his prescribed shots of phenergan and toradol for headache pain and vomiting.

ECF No. 6.  The barracks security officer called the hospital, and the hospital staff "deferred the

situation" to Defendant Denham, the night pill call nurse.  Defendant Denham saw Plaintiff at

approximately 1:00 a.m. on October 25, 2014, and gave him a phenergan pill instead of a injection,

stating he did not have any needles.  There was no toradol injection.  Defendant Denham returned

to Plaintiff at approximately 3:30 a.m. on October 26, 2014, with a phenergan injection, but no

toradol.  He promised Plaintiff he would return with a toradol injection, but did not do so before

the end of his shift in the morning.  Plaintiff filed a grievance.  ECF No. 6, p. 4.  Plaintiff went to

the 7:00 a.m. pill call and the nurse who replaced Defendant Denham gave him a toradol injection.

ECF No. 6, p. 5.

Plaintiff proceeds against Defendant in his personal capacity.  ECF No. 6, p. 3.  Plaintiff

seeks compensatory and punitive damages.  ECF No. 6, p. 5.

Defendants filed their Summary Judgment Motion on September 26, 2016.  ECF No. 17.

Plaintiff responded on November 11, 2016.  ECF No. 22.  Plaintiff filed a Supplement on

November 7, 2016. ECF No. 26.  Defendant replied to the response on November 21, 2016.  ECF

No. 28.  Plaintiff was directed to complete, sign, and return a summary judgment questionnaire on

November 21, 2016, and did so on December 9, 2016.  ECF Nos. 30, 31.

**2.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.     DISCUSSION**

Defendant argues summary judgment in their favor is appropriate on the following grounds: (1) Plaintiff did not have objectively serious medical need; and 2) Defendant Denham was not deliberately indifferent to Plaintiff's medical needs. ECF No. 18, p. 1.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective

component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

4

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."  *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted).  Unless, however, the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Defendant argues Plaintiff's headache and vomiting, without some intervening cause such as an injury, did not constitute an objectively serious medical condition.  Rather, they were simply pain and discomfort, which individuals in the free world deal with regularly and without resorting to emergency intervention.  ECF No. 18, p. 9.  As support for this argument, they provide affidavits from Drs. Vowell and McKinney, both physicians who provided evaluation and treatment to Plaintiff during his incarceration.  ECF No. 19-2, p. 2; 19-3, p. 4.  Dr. McKinney further noted Plaintiff was already receiving several other medications that are helpful for migraine symptoms that night, and he had experienced two similar nights with no pain medication and with delayed phenergan.  ECF No. 19-3, p. 4.  Finally, Dr. McKinney stated the prescriptions for phenergan and

toradol did not automatically indicate that his condition was serious.  Instead, they were intended to alleviate discomfort and to help his nausea and vomiting so he could stay hydrated.  ECF No. 19-3, p. 4.

Plaintiff characterized the headache pain as severe, and the vomiting as convulsive.  ECF No. 23. p. 2.  Plaintiff's medical records also indicate he is a cardiac patient who has required both stents and bypass surgery.  ECF No. 19-1, p. 1.  Therefore, giving Plaintiff the benefit of all reasonable inferences, I will consider his headaches and vomiting to be serious medical conditions for the purpose of this summary judgment motion.  Plaintiff has therefore met the first objective prong of the deliberate indifference test.

Plaintiff's allegations and evidence do not, however, meet the subjective prong of the test. Regarding the lack of toradol injection, Defendant Nurse Denham argues he was not permitted to give the injection in Plaintiff's cell and he did not have the authority to make arrangements to have Plaintiff taken to the unit hospital.  ECF No. 18, p. 8.  Dr. Vowell's affidavit and the prescription itself expressly state the toradol injection is only to be given in the Day Clinic.  ECF Nos. 19-1, p. 20; 19-2, p. 3.  As the night pill call nurse, Defendant Denham was not free to disregard physician orders and was not responsible for treatment decisions.  *See Rowe v. Norris*, 198 Fed. Appx. 579, 580 (8th Cir. 2006) (facility medical manager and nurse not directly responsible for treatment decisions of physician).  Further, a delay in receiving pain medication when it is not available does not automatically state a claim for deliberate indifference.  *See Champion v. Kelley*, 495 Fed App'x 769 (8th Cir. 2012) (upholding the district court's decision that missing two of three doses of pain medication for one day because facility ran out of the drug was not deliberate indifference).

Regarding the phenergan administration, Defendant Denham argues the administration was

only delayed by a few hours, with the pill given at 1:00 a.m., and the injection at 3:30 a.m.  ECF No. 18, p. 7.  At his deposition, Plaintiff testified Defendant Denham was covering night pill call for eight separate barracks.  ECF No. 19-5, p. 5.  Dr. Vowell opined that the pill was likely given as the result of an unremoved pill card, which had expired the week before.  Further, the night pill pass nurse's job duties do not include giving inmate injections.  ECF No. 18, p. 8; 19-2, p. 3; 19-3, p. 2.  Both Dr. Vowell and Dr. McKinney stated Defendant Denham went beyond his duties and made a "special trip" to obtain the injectable phenergan and syringe to help Plaintiff.  ECF No. 19-2, p. 3; 19-3, p. 2.  Again, it was security who had the authority to make arrangements to take Plaintiff to the unit hospital if necessary.  An affidavit by the security officer who contacted medical that night states he told Plaintiff to call if his problems did not get better after he was tended by medical and received his pill.  He stated Plaintiff did not approach him for the rest of the night to say that he felt worse.  ECF No. 19-4.  As noted above, Plaintiff had also already received several medications helpful to migraine symptoms.  Dr. Vowell also stated that Plaintiff told her a few days later on November 4, 2014, that the phenergan and toradol were not helpful; a comment which is noted in Plaintiff's medical records.  ECF No. 19-1, pp. 9-10; 19-2, p. 3.

Based on this record, there is no evidence that Defendant Denham was deliberately indifferent to Plaintiff's care.  To the contrary, Denham appears to have gone beyond his job duties to try to aid Plaintiff while simultaneously covering the night pill needs of eight other barracks. The delay of a few hours in receiving his phenergan was not inconsistent with the wait he would have experienced in a free-world emergency room.  *See Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (abrogated on other grounds) (initial delay of two to three hours before seeing the nurse was normal and consistent with the delays occurring outside of prison for treatment of the

same injury).  I can find no evidence in the record that Defendant Denham was deliberately indifferent, or even negligent, as to Plaintiff's care that night.

Plaintiff failed to present verifying medical evidence that the Denham ignored an acute or escalating situation or that any delays adversely affected his prognosis. [1]  The medical record shows Plaintiff was treated for headaches and vomiting starting September 15, 2014, indicating this had been an ongoing chronic condition by late October.   ECF No. 19-1, p. 1.   Plaintiff did not approach security to ask to be taken to the hospital after the initial 11:30 p.m. request on the night in question.  Both Dr. Vowell and Dr. McKinney opined that Plaintiff was not medically harmed by a delay of a few hours in receiving his medication.  ECF Nos. 19-2, p. 2; 19-3, pp. 4-5.  Plaintiff himself reported that the headaches and vomiting resolved after his blood pressure medication was adjusted.  ECF No. 6, p. 3.

Accordingly, there are no questions of material fact which remain, and Defendant is entitled to judgment in his favor as a matter of law.

## 4.   CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 17) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

---

[1] It is therefore not necessary to address Plaintiff's arguments regarding which various implements and medications were supposed to be available at what pill window.

8

**DATED this** 25th **day of July 2017.**

/s/  Barry A. Bryant

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE